RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0405p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DEALER COMPUTER SERVICES, INC.,

*Plaintiff-Appellant*,

*v.*

No. 07-1819

DUB HERRING FORD, et al.,

*Defendants-Appellees*.

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-10263—Nancy G. Edmunds, District Judge.

Argued: October 21, 2008

Decided and Filed: November 18, 2008

Before: KEITH, MERRITT, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ARGUED:** John C. Allen, Houston, Texas, for Appellant. Richard David Faulkner, BLUME & FAULKNER, P.L.L.C., Richardson, Texas, for Appellees. **ON BRIEF:** John C. Allen, Houston, Texas, for Appellant. Richard David Faulkner, James D. Blume, BLUME & FAULKNER, P.L.L.C., Richardson, Texas, for Appellees.

---

## OPINION

---

DAMON J. KEITH, Circuit Judge. Plaintiff Dealer Computer Services, Inc. ("DCS") appeals the district court's denial of its motion to vacate an arbitration award that did not preclude class arbitration of contract claims brought by Defendants Dub Herring Ford, et al. ("Dealers") against DCS. DCS argues the district court erred by failing to find the arbitration panel both exceeded its powers in violation of 9 U.S.C. § 10(a)(4) and acted with "manifest disregard of the law." DCS also appeals the district court's denial of its related motions for default judgment and reconsideration.

We conclude the district court lacked jurisdiction to consider DCS's motion to vacate the arbitration award because the matter was not ripe for judicial review. Therefore, we **VACATE** the orders of the district court with respect to DCS's pending motions and **REMAND** the case to the district court with instructions to **DISMISS** for lack of jurisdiction.

1

# I. BACKGROUND

DCS was a vendor of computer software and hardware systems, which supported the parts and repair operations of automobile dealerships across the country. Dealers consist of a number of individual automobile dealerships who separately contracted with DCS for its equipment and services. The agreement entered into by DCS and a particular dealership was made using one of four different "boilerplate" contract forms. Section 17 of each form contained a broad arbitration clause that required a dealership to arbitrate, under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), any contract-related claims it asserted against DCS.

Dealers allege DCS committed certain contract violations relating to the functionality and provision of DCS's software and hardware systems. On May 12, 2006, Dealers filed a Demand for Arbitration against DCS with the AAA, seeking to arbitrate these contractual claims as a class rather than individually. A three-arbitrator panel granted a "Clause Construction Award" in favor of Dealers, ruling the arbitration provisions found in the various contracts did not preclude class arbitration. Am. Arbitration Assoc., *Dub Herring Ford v. Dealer Computer Servs., Inc.*, Case No. 11-181-01119-06, Clause Construction Award (Nov. 26, 2007) [hereinafter "Clause Construction Award"], J.A. at 132.[1]

DCS filed a motion to vacate the Clause Construction Award in the Eastern District of Michigan, asserting that the arbitration panel both exceeded its powers in violation of 9 U.S.C. § 10(a)(4) and acted with "manifest disregard of the law" by not interpreting the arbitration clauses at issue to prohibit class arbitration. On March 29, 2007, Dealers responded with a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), claiming the district court lacked subject matter jurisdiction to review the arbitration award. On April 18, 2007, DCS filed a motion for default judgment against Dealers. On May 29, 2007, the district court issued an order: (1) denying DCS's motion to vacate the Clause Construction Award; (2) denying Dealers' motion to dismiss; and (3) denying DCS's motion for default judgment. *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 489 F. Supp. 2d 772, 774 (E.D. Mich. 2007). The court also entered judgment in favor of Dealers.

DCS subsequently moved for reconsideration, which the district court also denied on June 11, 2007. DCS filed a timely notice of appeal on June 15, 2007 to challenge the court's ruling on its motion to vacate the Clause Construction Award, motion for default judgment, and motion for reconsideration.

# II. ANALYSIS

The case on appeal raises a threshold question of jurisdiction. We must specifically consider whether the Clause Construction Award DCS seeks to vacate is ripe for judicial review. Although Dealers did not appeal the district court's denial of their Fed. R. Civ. P. 12(b)(1) motion to dismiss, "we must *sua sponte* police our own jurisdiction." *Ohio v. Doe*, 433 F.3d 502, 506 (6th Cir. 2006). A federal appellate court has an obligation to "satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation and internal quotation marks omitted). A federal appellate court applies a *de novo* standard when reviewing the district court's determination of jurisdiction. *See Green v. Ameritech Corp.*, 200 F.3d 967, 972 (6th Cir. 2000).

---

[1] The Clause Construction Award issued by the arbitration panel actually stated the contracts "permit[ted]" class arbitration. Clause Construction Award, J.A. at 132. We find articulating the panel's ruling in negative terms more precisely captures the import of the decision because class arbitration cannot affirmatively proceed until the class is also certified according to AAA rules. The significance of this distinction is discussed in our analysis of ripeness below.

## A.  Relevant Factors

The ripeness doctrine "focuses on the timing of the action." *See United States Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003).  "[It] is more than a mere procedural question; it is determinative of jurisdiction.  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *River City Capital, L.P. v. Bd. of County Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007) (citation and internal quotation marks omitted). Ripeness "draw[s] both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (citation and internal quotation marks omitted).  Enforcing ripeness requirements discourages "premature adjudication" of legal questions and judicial entanglement in abstract controversies. *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc).  Thus, the doctrine serves as a bar to judicial review whenever a court determines a claim is filed prematurely.

The key factors to consider when assessing the ripeness of a dispute are: (1) the likelihood that the harm alleged by the party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits. *Letter Carriers*, 330 F.3d at 751.  We find the factual record sufficiently developed because DCS's motion to vacate pertains to contract construction and the parties do not dispute the text of the relevant contractual agreements.  But, as discussed below, application of the first and second factors compels us to conclude the matter is not yet ripe for judicial review.

## 1.  Likelihood of Harm

We first consider the likelihood the harm alleged by DCS will "ever come to pass." *Id.* When considering a demand for class arbitration, an arbitrator must determine, as a threshold matter, "[w]hether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award')." Am. Arbitration Assoc., Supplementary Rules for Class Arbitrations, Rule 3, *available at* http://www.adr.org/sp.asp?id=21936 [hereinafter "Supplementary Rules"].  In its motion to vacate the Clause Construction Award,  DCS argued the arbitration panel erred by interpreting the arbitration clause, found in various agreements between DCS and individual dealerships, not to preclude class arbitration of Dealers' contract claims.  Clause Construction Award, J.A. at 132.[2]  By filing this motion, DCS presumably sought to avoid the "harm" of increased time, expense, complexity, and potential liability often associated with the defense against a class proceeding.[3]

Even if these concerns would ordinarily justify judicial review, DCS's motion to vacate remains unripe because the AAA panel's ruling did not conclusively determine that Dealers' claims *should* proceed as a class arbitration. The Clause Construction Award at issue on appeal merely held that the distinct arbitration clauses in the various contracts between DCS and Dealers did not preclude class arbitration.  The decision to affirmatively authorize class arbitration under the AAA

---

[2]DCS asserted that the arbitration panel both exceeded its powers in violation of 9 U.S.C. § 10(a)(4) and acted with "manifest disregard of the law" by not interpreting the arbitration clauses at issue to prohibit class arbitration.  A United States district court may vacate an arbitration award upon application of a party "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  A court may also vacate an award on non-statutory grounds if the arbitration panel demonstrates a "manifest disregard of the law." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). *But see Hall St. Assocs. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403-04 (2008).

[3]DCS did not address the issue of ripeness in the briefs it submitted to the Court.

rules is governed by a separate "Class Determination Award." Supplementary Rules, Rule 5(a).**4** Dealers can secure a "Class Determination Award" only if they satisfy AAA class certification requirements:

> (a) Prerequisites to a Class Arbitration...
>
> > (1) [t]he class is so numerous that joinder of separate arbitrations on behalf of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) counsel selected to represent the class will fairly and adequately protect the interests of the class; and (6) *each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members.*
>
> (b) Class Arbitrations Maintainable.
>
> > An arbitration may be maintained as a class arbitration if the prerequisites of subdivision (a) are satisfied, and in addition, the arbitrator finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy . . . .

Supplementary Rules, Rule 4(a)-(b) (emphasis added).

Given the significant hurdles posed by Rule 4, it remains far from certain that the arbitration panel will certify Dealers' claims for class arbitration. If the panel denies class certification, the individual defendants comprising Dealers' putative class will be forced to separately arbitrate their claims against DCS. Therefore, the harm feared by DCS in defending against a class arbitration may never "come to pass." *Letter Carriers*, 330 F.3d at 751. Because DCS's motion to vacate is "anchored in future events that may not occur as anticipated, or at all," the likelihood of harm factor strongly weighs against finding the Clause Construction Award ripe for review. *See City Commc'ns, Inc. v. City of Detroit*, 888 F.2d 1081, 1089 (6th Cir. 1989).

## 2. Hardship in Withholding Judicial Review

The Court also considers the hardship DCS will face if judicial review is withheld at this stage of proceedings. *Letter Carriers*, 330 F.3d at 751. When an AAA arbitration panel issues a "Class Determination Award" certifying a matter for class arbitration, the panel must stay proceedings for at least thirty-days to permit a party "to move a court of competent jurisdiction to confirm or vacate the [award]." Supplementary Rules, Rule 5(d). The stay procedures set forth in Rule 5(d) enable a party to contest an unfavorable decision on class certification in court *before* commencement of class arbitration and resolution of the merits by the arbitration panel. Thus, if the arbitrators in this case ultimately decide to certify Dealers' class, which is no certainty, Rule 5(d) would nonetheless provide DCS ample opportunity to obtain judicial review of any arguments it may have against class arbitration, including those challenging the soundness of the arbitration panel's prior Clause Construction Award. Given this prospective opportunity for judicial review,

---

**4**"The arbitrator's determination concerning whether an arbitration *should* proceed as a class arbitration shall be set forth in a reasoned, partial final award (the 'Class Determination Award') . . . ." (emphasis added). Supplementary Rules, Rule 5(a).

it does not appear DCS will suffer any material hardship if review is withheld at this preliminary stage of arbitration.

The absence of hardship for DCS at this juncture renders DCS's motion to vacate the sort of premature adjudication the ripeness doctrine seeks to avoid. Indeed, we should remain "reluctant to invite a judicial proceeding every time the arbitrator sneezes." *Smart v. Int'l Bhd. of Elec. Workers, Local 702*, 315 F.3d 721, 725 (7th Cir. 2002).

## B. District Court Rationale

Nothing in the lower court's discussion of jurisdiction persuades us to find the Clause Construction Award ripe for review. The court appears to have concluded it enjoyed jurisdiction to hear DCS's motion to vacate because Rule 3 contemplates judicial review of Clause Construction Awards. *Dealer Computer Servs.*, 489 F. Supp. 2d at 777-78. Similar to the Rule 5(d) stay procedures following Clause Determination Awards, Rule 3 orders an arbitrator to "stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award." Supplementary Rules, Rule 3. The district court concluded this provision "evinces an intent that such matters are properly reviewed by a federal district court even though a final result has not yet been reached [on the merits]." *Dealer Computer Servs.*, 489 F. Supp. 2d at 777. Accordingly, the court determined it had subject matter authority to rule on DCS's motion to vacate. *Id.* at 778.

The district court's reliance on the intent of the AAA, a private dispute resolution organization, is misplaced. While the AAA is free to permit parties to seek judicial review for the purposes of its own proceedings, Article III ripeness requirements will not necessarily be satisfied whenever the AAA allows such review. *Cf. Marron v. Snap-On Tools, Co.*, 2006 WL 51193, *2-3 (D.N.J. Jan. 9, 2006) (disregarding plaintiff's argument that "Rule 3 of the AAA specifically contemplates judicial review" when declining to review plaintiff's motion to vacate an AAA Clause Construction Award). The significance of the access to judicial review contemplated by the AAA rules to the issue of ripeness derives from the hardship DCS may suffer if the procedural circumstances compel it to defend against a class arbitration. The AAA, however, does not have the authority to waive away Article III-based ripeness deficiencies. Federal courts should not grant judicial review of arbitration awards simply because the organization conducting arbitration would like them to do so.

We also do not believe cases decided in other circuits and referenced by the district court in support of its holding cast doubt on our conclusion regarding jurisdiction. *Dealer Computer Servs.*, 489 F. Supp. 2d at 778; *see Sutter v. Oxford Health Plans L.L.C.*, 227 Fed. App'x 135, 136-37 (3d Cir. 2007); *Long John Silver's Rest., Inc. v. Cole*, 409 F. Supp. 2d 682 (D.S.C. 2006); *Genus Credit Mgmt. Corp. v. Jones*, 2006 WL 905936 (D. Md. Apr. 6, 2006). *Sutter* and *Long John Silver's* are distinguishable from the instant action because both of those matters involved a motion to vacate an arbitration award granting class certification rather than one merely interpreting a clause construction–a key distinction given the above discussion. Unlike *Sutter* and *Long John Silver's*, however, *Genus Credit* specifically held a court possessed jurisdiction to review an AAA Clause Construction Award, which interpreted the arbitration clause at issue to not preclude class arbitration. *See Genus Credit*, 2006 WL 905936, *2. The court found it "prudent to render a decision on the [Clause Construction Award] before [the parties] are forced to adjudicate the entire dispute." *Id.,* *1-2.

We remain skeptical of the underlying rationale of *Genus Credit* despite the applicability of its holding. First, *Genus Credit* relies on the distinguishable precedent of *Sutter* and *Long John Silver's* in reaching its decision. *See id.* Second, and more importantly, *Genus Credit* failed to

analyze adequately ripeness when concluding the court possessed jurisdiction to review the arbitration award. Its cursory discussion never acknowledged the possibility that the arbitration panel in its case would decline to certify defendants' class, thereby obviating the potential harm of defending against a class proceeding. Nor did *Genus Credit* demonstrate how its plaintiff would suffer if the court withheld judicial review at that stage, given the later opportunity for judicial review through Rule 5(d), in the event the panel did certify the class.

These significant omissions from *Genus Credit'*s jurisdictional analysis prevent the Court from agreeing with its view. At bottom, neither the supporting cases offered by the district court in the instant action nor its references to the judicial review contemplated by Rule 3 persuade this Court that jurisdiction existed to hear DCS's motion to vacate.

## C. Summary

Dealers may ultimately fail to secure class certification for their claims, thus the potential harm to DCS involved in defending against a class arbitration may never occur. Furthermore, if Dealers obtain class certification, DCS will not suffer any material hardship if this Court denies review at this stage because DCS can still obtain judicial review through Rule 5(d) before actual commencement of class proceedings. Given the weight of these factors, notwithstanding a sufficiently developed factual record, the Court finds the arbitration panel's Clause Construction Award to be unripe for review.[5]

## III. CONCLUSION

For the foregoing reasons, we **VACATE** the orders of the district court with respect to DCS's pending motions and **REMAND** the case to the district court with instructions to **DISMISS** for lack of jurisdiction.

---

[5]Dealers argued in their brief both that DCS failed to demonstrate a basis for federal jurisdiction and that this Court lacked appellate jurisdiction to review the substance of the district court's denial of DCS's motion to vacate. Because we rule the district court lacked jurisdiction on ripeness grounds, we need not decide these separate issues.