MICHAEL P. MILLS, District Judge,
concurring in result only:
I • agree -with the majority that, the district court correctly concluded,. based on *184 the facts of this case, that the amount in controversy should be decided based on the $20 million demand in arbitration. I write separately because I believe that the parties to this appeal have framed the issues in an overbroad manner which has led the majority to make a holding which is broader than is necessary in this case. I also write to make clear my view that many of the legal assumptions underlying this interlocutory appeal are erroneous, based largely upon inaccurate descriptions of the state of federal precedent set forth in the D.C. Circuit’s opinion' in Karsner v. Lothian, 532 F.3d 876, 882 (D.C.Cir.2008).
I understand the majority’s inclination to simply answer the question as certified; indeed, that was also my initial inclination. However, in cases where an interlocutory appeal is based upon a suspect legal assumption, I feel it is incumbent upon us to correct it. This court granted interlocutory appeal to resolve the controlling issue of law as to “the proper method of determining the amount in controversy for the purpose of establishing diversity jurisdiction over a petition to confirm an arbitration award.” The parties to this litigation clearly anticipated that, in deciding this issue, this court would choose between two alleged “approaches” in this context, namely the “demand approach” and the “award approach.” The parties seem to agree that a third alleged “approach,” namely the “remand approach,” is inapplicable here.
Certainly, providing clarification to district courts is a laudable goal, and, if either the “award approach” or the “demand approach” provided what I felt to be reliable standards for assessing amount in controversy issues in motions to confirm arbitration awards, I would be only too happy to support the adoption of such a rule. However, upon closer review of federal appellate case law in this context, I do not believe that it is either necessary or advisable to adopt any such general “approach” in this context.
I believe that, when one carefully reads the various federal appellate decisions in this context and considers the factual scenarios presented, one inevitably comes to the conclusion that the vast majority of these decisions are quite reasonable. This is true whether the federal appellate decision in question considered the amount of the demand, the amount of the award, or whether a remand to arbitration is sought to be the most important factor in determining the amount in controversy. Kars-ner instructs us that the federal courts are sharply divided into various “approaches” in this context, yet such was not true when the D.C. Circuit’s opinion was written. To the extent such is true now, this appears to be largely the result of Karsner’s outsized influence. Unfortunately, Karsner has become something of a self-fulfilling prophecy, since many federal courts, including a number of district courts in this circuit (and the one in this case) have accepted Karsner’s premise that the law in this context is one in which federal courts must choose a single “approach” when determining amount in controversy issues. The majority has likewise accepted the Kars-ner premise in its opinion in this case.
Like the majority, I initially accepted Karsner’s premise at face value and believed that- this court was required to choose from the two “approaches” which are arguably relevant in this case, namely the “demand approach” and the “award approach.” I have since determined, however, that Karsner’s basic paradigm is faulty. There is nothing in the U.S. Supreme Court’s jurisprudence suggesting that it is either necessary or advisable for circuit courts to choose a single factor to be used to determine the amount in controversy in all motions to confirm arbitra *185 tion awards, no matter the circumstances. The current version of § 9 of the FAA was enacted in 1947, and it seems likely that, if the U.S. Supreme Court intended for the amount in controversy issues in this context to be determined based upon a single factor, then it would have so indicated by now. In my view, a federal court’s overriding duty is to determine whether the amount in controversy is met in a particular case, arid I fail to see how any single approach could possibly yield the correct result in all cases.
In Karsner, the D.C. Circuit conducted a review of nationwide authority in this context arid, in so doing, it classified various. circuits as following the “award approach,” “demand approach” or “remand approach.” Karsner’s classifications in this regard, even at this late stage in the law, appear to be suspect. I note that certain circuit court decisions which were described by Karsner as following the “award approach” were actually quite narrow decisions which included no language adopting any rule of general applicability. In Baltin v. Alaron Trading Corp., 128 F.3d 1466 (11th Cir.1997), for example, the Elevénth Circuit’s analysis of whether diversity jurisdiction existed was simply as follows:
Finally, we must determine whether the district court had diversity jurisdiction over this case. See 28 U.S.C. § 1332(a). The maximum remedy sought by the Baltins was the vacatur, of the arbitration award of $36,284.69.16. Diversity jurisdiction did not exist because it was a “legal certainty” that the amount in controversy was less than $50,000, the amount required for federal diversity jurisdiction at the time the Baltins filed suit.
Baltin, 128 F.3d at 1472.
Similarly, in Ford v. Hamilton Inv., Inc., 29 F.3d 255 (6th Cir.1994), the Sixth Circuit, in finding that the amount in controversy requirement was met in that case, wrote that:
Mr. Ford’s" complaint alleges that the arbitration panel awarded Hamilton Investments $26,666.63, plus $3,857.53 in interest. The total of these figures obviously does not exceed $50,000. In the arbitration proceedings Mr. Ford claimed more than $50,000 against Harii-ilton Investments, but he never asked the district court to order that the arbitrators reopen his claim against Hamilton Investments; all he sought from the district court was the vacation of an award that fell short of the jurisdictional amount by almost $20,000.
Ford, 29 F.3d at 260.[1]
In my experience, circuit courts which seek to adopt particular standards as binding in future cases generally do so after considering a wide variety of factors applicable not only to the case at bar, but also to other cases as well. There is no such analysis contained in these two decisions, nor do either of them cite another decision from their circuit as dictating a specific factor which they must consider in determining the amount in controversy. It thus seems clear to me that the circuit courts in Baltin and Ford simply concluded that, based on the facts before them, the amount in controversy issue should be decided based on the amount of the award in those cases, with no attempt to adopt a general “approach” in this context.[2]
*186 While I agree with the district court that the amount of the demand is most relevant in this case, I believe that the results reached in Baltin and Ford were quite reasonable, based upon the facts presented in those cases. Without delving too deeply into the facts of Baltin and Ford,, I note that they each involved factual scenarios where it was clear, at the time of the filing of the federal action, that no party was continuing to seek recovery in excess of the jurisdictional amount. Baltin and Ford each involved motions to vacate arbitration awards which were filed by parties who had received adverse financial judgments against them in arbitration, in an amount below the federal jurisdictional amount.[3] As noted in the aforementioned quotations, each of the petitioners in those cases sought to have the arbitration verdicts against them reduced to zero, and the circuit courts in those decisions thus found that the arbitration awards represented the upper limit of any financial award which might result from the motions to vacate. That strikes me as being a quite reasonable conclusion based upon the facts of those cases.
In this case, by contrast, appellee is only too happy to pay the $10,000 arbitration award entered against it; indeed, it has tendered that amount to appellants. Moreover, appellee filed its motion to confirm under circumstances where it had every good faith reason to believe, as was confirmed by subsequent events, that appellants would oppose the arbitrator’s award, with a clear goal of obtaining recovery in excess of the jurisdictional amount. Thus, in this case,.unlike in Baltin and Ford, the arbitrator’s award represents the lower, not the upper, range of possible results from litigation relating-to the validity, of the arbitrator’s award. Accordingly, the amount of the award in arbitration constitutes a far less reliable basis for evaluating the amount in controversy here than in Baltin, .and Ford. This illustrates the quite simple point that different cases are different and that different factors may be relevant in resolving them.
I also note that some of the decisions which Farmer described as following a particular approach purported to be consistent with decisions which ostensibly follow a different approach. Indeed, Fars-ner .described the Ninth Circuit’s decision in Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 664-65 (9th Cir.2005) as adopting the “demand approach,” but Theis cited, with apparent approval, the Baltin and Ford decisions, which, once again, have been cited as following the “award approach.” In harmonizing its result with that in Baltin, for example, the Ninth Circuit in Theis noted that the Eleventh Circuit had stressed that the plaintiffs in Baltin “did not request an award modification that would provide[them] witli money. Instead, [they] sought merely to reduce or eliminate the arbitration award against them.” Theis, 400 F.3d at 664, citing Baltin, 128 F.3d at 1472, n. 16.
If what Farsner described as leading circuit court decisions in favor of the “demand approach” and the “award approach” are actually in substantial agreement with each other, then I must wonder how real *187 these alleged “approaches” actually are. In so- stating, I note that Karsner described the First Circuit’s decision in Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321 (1st Cir.2000) as “applying” the .“demand approach,” but this characterization clearly seems inaccurate. Indeed, the First Circuit specifically reserved judgr ment on this issue, writing that:
Hidden in the issue is another issue which we note but do not' resolve. That is whether the amount requirement is met where the sums at issue before the arbitrator at the start of the arbitration exceed $75,000, the final (non-partial) award is for less than $75,000, and the federal judicial relief sought is merely vacating and dismissing or merely confirming the award.
Bull, 229 F.3d at 329. The First Circuit instead decided the amount in controversy issues in that case based upon factors specific to bifurcated arbitration proceedings, see id., and it thus seems quite clear that Bull neither adopted nor followed any general “demand approach.”
Giving Karsner the benefit of the doubt, it could be argued that the term “approach” is itself ambiguous and-that the reference to a court following a particular “approach” does not necessarily mean that it would never follow a different approach. At a bare minimum, however, the Karsner approach is confusing, and district courts in this circuit have interpreted the decision as requiring courts to single out one factor to elevate above all others. See, e.g. Busby v. Bruce Massey Const., LLC, 2015 WL 7015349, at *1 (S.D.Miss. Nov. 12, 2015); Curbelo v. Hita, 2009 WL 2191084, at *4 (W.D.Tex. July 22, 2009). Removing confusion in this regard seems reason enough to distance ourselves from Karsner,
In deciding whether to adopt a general approach in this regard, I consider it quite significant that one federal circuit which initially appeared to adopt such' an approach quickly thought better -of the idea. Indeed, on motion for rehearing, the Ninth Circuit in. Theis modified its opinion to replace generalized language, consistent with an “approach” to one which merely made a caserspecific finding, that the amount of the demand in arbitration was most relevant in that case. In other words, the,Ninth Circuit modified its opinion- to do exactly what this concurrence recommends. Specifically, the Ninth Circuit in Theis deleted a sentence including the language:
Our conclusion-that we measure the amount in controversy by the amount at stake in the underlying litigation is consistent not only with American Guaranty from this circuit, but with decisions from other circuits as well.
Theis, 400 F.3d at 661. The deleted sentence was replaced with the following sentence:
Our decision to measure the amount in controversy in this case by the amount at stake in the underlying litigation is consistent not only with American Guaranty from this circuit, but with decisions from other circuits as well.

Id.

Thus, the Ninth Circuit deleted generalized language - stating that “we measure the amount in controversy by the amount at stake in the underlying litigation” and replaced it with far more limited language stating that the court was merely finding “in this case” that the amount in controversy should be measured on that basis. In its revised opinion, the Ninth Circuit specifically noted the modifications to its opinion, writing that:
With the foregoing amendments, the panel has voted unanimously to deny the petition.for rehearing. Judge Trott has -also voted to deny the petition for re *188 hearing en banc, and Judges Thompson and Weiner recommend denial of that petition.
Id. at 661. The clear implication of the above is that, after initially releasing an opinion which included generalized language adopting something like a “demand approach,” the Ninth Circuit quickly realized that its holding gave rise to conflicts with reasonable decisions from other circuits and accordingly modified its opinion to make a case-specific holding and thereby avoid having to rehear the case, either in panel or en banc.
It seems clear from the manner in which the Ninth Circuit framed the issues in Theis that it initially intended to adopt a broad holding setting forth that circuit’s approach to amount in controversy issues in this context. I can discern no reason why the Ninth Circuit would have modified its opinion in the manner it did other than to greatly narrow its holding. The fact that it was the Ninth Circuit’s intent, in modifying the language in question, to move away from any “demand approach” is made even clearer by the fact that the modified language immediately preceded the portion of the opinion where the court wrote approvingly of the Baltin and Ford decisions. Clearly, an opinion can not be said to have adopted the “demand approach” if it writes approvingly of, and claims to be consistent with, decisions which deem the amount of the award most relevant.[4]
I do not wish to be cumulative or unnecessarily harsh in criticizing Karsner, but since that decision’s logic undergirds the majority’s opinion, I will note another instance in which the decision inaccurately characterized another circuit’s precedent. Specifically, the D.C. Circuit wrote that the Eleventh Circuit, which it described as initially “follow[ing] the award approach” in Baltin, “appeared] to have more recently adopted the remand approach.” Karsner, 532 F.3d at 882-83, citing Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc., 431 F.3d 1320, 1325-26 (11th Cir.2005). I submit, however, that both Baltin and Peebles represent entirely logical and correct determinations of amount in controversy issues based on the facts of each case and that, contrary to Karsner, neither decision adopted an “approach” inconsistent with the other.
Indeed, the Eleventh Circuit in Peebles made it clear that it regarded its decision as consistent with Baltin, writing that:
This issue is a matter of first impression for this court. Baltin does not speak to the issue raised here because “the maximum remedy sought” by the investors was the vacatur of the arbitration award against them that did not exceed the minimum required to satisfy 28 U.S.C. § 1332. 128 F.3d at 1472. Here the maximum remedy Peebles sought was vacatur- of a zero dollar arbitration award and a new arbitration hearing at *189 which he could urge his argument that he was entitled to up to $2,000,000 in damages. We hold that a federal court has subject matter jurisdiction where a party seeking to vacate an arbitration award is also seeking a new arbitration hearing at which-he will, demand a sum which exceeds the amount in controversy for diversity jurisdiction purposes. This approach is consistent with the approach taken by other circuits that have had occasion-to address this question. See, e.g., Theis Research, Inc. v. Brown & Bain, 400 F.3d 659 (9th Cir.2005); Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321 (1st Cir.2000).
Peebles, 431 F.3d at 1325-26. I. find the logic of both Baltin and Peebles to be clear, and I believe that Karsner was simply incorrect in its characterization of these decisions.
I submit that most of the federal appellate-authority in this context may be easily reconciled with each other and that such precedent may serve as persuasive authority for district courts to consider. This is particularly true if the decisions are analyzed from a paradigm of common sense, rather than “approaches.” For example, I believe that a district court reviewing the facts of this case and Theis would be able to readily understand why the amount of the plaintiffs’ demand was deemed most relevant, as opposed to cases like Baltin and Ford, where the amount of the award was considered dispositive. By the same token, I think a district court would readily understand why the Eleventh Circuit in Peebles, faced with a plaintiff seeking a remand to arbitration, viewed that fact as trumpipg the amount of the award in arbitration; thus rendering Baltin distinguishable. Indeed, as a simple matter of common sense, it is illogical to consider the award in arbitration dispositive if the plaintiff is seeking to return to arbitration, where he might seek an amount greater than the award. Recognizing this fact does not require the adoption of the “remand approach”; it merely requires the application of common sense.
Given that there are reasonable federal appellate decisions finding each of the three factors relevant in this context, I can see no benefit to following the Karsner approach of selecting a single factor to elevate above the other two. Indeed, it appears to me that there riiay well be ádditiohal factors which are relevant in this context. For example, consider a situation in which a plaintiff makes a demand in arbitration which is completely unrealistic. Assume, for example, a case in which a plaintiff sought $10 million in an arbitration action in which his sole claim was for property damage to his vacuum cleaner. Assume further that the arbitrator awarded only the $200 fair market value of the vacuum cleaner and that, a motion was filed in federal court to confirm that award. In my view, a district court should have the discretion to take a realistic look at the facts of that case and determine that, notwithstanding the amount of the demand in arbitration, the amount in controversy requirement was clearly not met. Such a finding would strike me as entirely reasonable, even though it does not fit within one of the three alleged “approaches.” I simply do not see the benefit of attempting to unduly limit the discretion of district courts to decide amount in controversy issues in this context.
As an additional point, I note that adopting the “demand approach” (or any other approach) would also run counter to the approach this circuit has taken in a closely analogous legal context, namely declaratory judgment actions filed by liability insurers. Conceptually-speaking, motions to confirm arbitration awards are quite similar to declaratory judgment actions, since they essentially seek a judicial declaration *190 that an arbitration award is a valid one under the applicable legal standards. It is thus significant, in my view, that this circuit has adopted quite broad and flexible standards for determining the amount in controversy in declaratory judgment actions filed by insurers.
In St. Paul Reinsurance Co. v. Greenberg, 134 F.3d 1250 (5th Cir.1998), the plaintiff insurance company sought a declaration of liability arising from its denial of the insured’s claim. In this context, this court concluded that the amount in controversy is “the value of the right to be protected or the extent of the injury to be prevented.” Greenberg, 134 F.3d at 1253. Clearly, this is a quite broad and flexible standard, and, while this court has frequently relied upon the amount of the plaintiffs demand in assessing the amount in controversy in declaratory judgment actions, it has adopted no categorical rule in this regard. In Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908 (5th Cir.2002), for example, this court found that' the amount in controversy requirement was not met in that declaratory judgment action, based partly on the limited nature of the insurance claims in that case. Hartford, 293 F.3d at 912. This court also noted, however, that we might consider different factors in certain other insurance cases. For example, this court noted that “under certain circumstances the policy 'limits will establish the amount in controversy,” particularly in cases relating to the “validity of the entire contract between the parties.” Id. at 911, citing 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice ■and Procedure: Jurisdiction 3d § 3710 (3d ed. 1998).
Thus, this court has recognized that a categorical rule adopting a variant of the “demand rule” in the declaratory judgment context would be unwise and that greater flexibility in amount in controversy standards is required. I believe that such a flexible approach would serve this circuit well in the instant context as well. In my view, the simple fact is that there is no “one size fits all” solution in this context and that adopting an “approach” whereby all amount in controversy issues are decided based upon a single factor simply does not work. I believe that our circuit’s standards in the declaratory judgment context demonstrate that we can offer district courts guidance on making amount in controversy determinations without unduly tying their hands.
In light of the foregoing, I agree with the majority that the district court properly relied upon the plaintiffs’ demand in arbitration in deciding that the amount in controversy requirement was met in this ease, but I would decline to adopt any categorical “approach” in this context. While the “demand approach” works well enough in this case, I believe it will lead to incorrect results .when this, court is faced with a case involving facts such as those in Baltin or Ford. I therefore respectfully concur in result, only. ■

. I note that, in a decision written after Kars-ner, the Second Circuit similarly considered the amount of the award most relevant, without adopting any “approach” in this regard. See Fernicola v. Toyota Motor Corp., 313 Fed.Appx. 408, 409 (2d Cir.2009).

. This is made even clearer in the case of the Eleventh Circuit which, as discussed below, *186 later found a plaintiff’s request for a remand to arbitration to be dispositive, while emphasizing that this result was consistent with Baltin, See Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc., 431 F.3d 1320, 1325-26 (11th Cir.2005).

. In my view, the fact that' Baltin and Ford involved motions to vacate, rather than confirm, arbitration awards does not remove their relevance in this case. Indeed, both sides to this appeal have relied upon authorities relating to both motions to confirm and vacate arbitration awards, and it seems to me that similar principles should apply to each.

. The majority notes that, in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore, 171 Fed.Appx. 545, 546 (9th Cir.2006), the Ninth Circuit quoted certain language in Theis which had not been modified in support of the application of a broad demand "approach.” In my view, this simply reflects the fact that Theis was originally written to adopt the demand approach, and it appears that the Ninth Circuit modified the bare minimum of language in the opinion so as to assuage the concerns of judges who did not wish to adopt such a broad approach. Once again, the intent of the Ninth Circuit in Theis seems clear in light of the fact that the Court specifically praised, and claimed to be consistent with, Baltin and Ford. It seems self-evident that, if the Ninth Circuit would regard the amount of the award as being the determining factor in an appropriate case, then that circuit does not follow the "demand approach” at all. I do not believe that this circuit should do so either.